**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TOM MULLEN, et. al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No.  06 C 6818** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **SOCIETY OF STAGE DIRECTORS &** | ) | |
| **CHOREOGRAPHERS, et. al.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Tom Mullen, Brian Loeffler, John Rotonda, Jennifer Kules, Matthew Gunnels, and William Morey (collectively "Plaintiffs"), are suing the Society of Stage Directors & Choreographers, Barbara Hauptman, United Scenic Artists (individually "USA"), John Rando, John Carrafa, Scott Pask, Brian MacDevitt, and Gregory Gale (collectively "Defendants") in this Court for a declaration on non-infringement under the Copyright Act, 28 U.S.C. § 101 *et. seq.*, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (Counts I and II) and defamation (Count III).  On December 14, 2006, Plaintiffs  filed an amended complaint.  Before the Court now are USA's Motion to Dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and certain Defendants Motion for Judgement on the Pleadings, both motions assert failure to state a claim upon which relief can be granted.  For the reasons stated below, USA's motion is GRANTED partially and DENIED partially; certain Defendant's motion is DENIED.

## I.     BACKGROUND[1]

Plaintiffs seek a declaratory judgment that their Chicago production (the "Chicago Production") of "Urinetown!" the Musical (the "Work") was original and unique and did not copy any of Defendant's creative authorship present in Defendant's Broadway production of the Work (the "Broadway Production") under the Copyright Act.  Plaintiffs also seek a declaratory judgment that the Chicago Production did not constitute "passing off" Defendants' creative authorship, if any, in the Broadway Production as Plaintiffs' own, in violation of the Lanham Act.  Lastly, Plaintiffs seek damages for Defendants' knowingly false public statement that Plaintiffs staging of the Work in Chicago "plagiarized" substantial elements of the Broadway Production.

Tom Mullen is a professional stage Director, a member of the Society of Stage Directors & Choreographers ("SSDC") and he directed the Chicago Production.  Brian Loeffler is a professional Choreographer and he choreographed the Chicago Production.  John Rotonda was the Scenic Designer in the Chicago Production.  Jennifer Kules was the Lighting Designer in the Chicago Production.  Matthew Gunnels was the Associate Director in the Chicago Production.  William Morey was the Costume and Wig Designer in the Chicago Production.  The SSDC is a New York not-for-profit corporation.  Barbara Hauptman is the Executive Director of SSDC.  United Scenic Artists ("USA") is a New York not-for-profit corporation.  John Rando is the Director of the Broadway Production.  John Carrafa is the Choreographer of the Broadway Production.  Scott Pask is the Scenic Designer of the Broadway Production.  Brian MacDevitt is

_____

[1] All facts have been taken from the Amended Complaint and are taken as true for purposes of these 12(b)(6) and 12(c) motions.

the Lighting Designer of the Broadway Production.  Gregory Gale is the Costume Designer of the Broadway Production.

On or about November 9, 2005, Blue Dog Entertainment, LLC entered into a licensing agreement with Music Theatre International ("MTI"), whereby the Chicago Team was granted a license to use the script and music for Urinetown the Musical ("Urinetown").  The Work was first staged in 1999 at the New York International Fringe Fest by Joseph P. McDonnell, who directed the original production of the Work.  A copyright claim to the book and lyrics of Urinetown was registered with the U.S. Copyright Office on August 12, 1998, by Greg Kotis and Mark Hollmann.  A copyright claim to the lighting design of Urinetown was registered with the U.S. Copyright Office on August 21, 2006, by Brian MacDevitt.  No other copyright claims associated with Urinetown have been registered with the U.S. Copyright Office.  In order to make the satire of musical theater conventions successful, it is necessary to borrow heavily from the parodied works themselves, including such elements as stage direction, choreography, scenic design, costumes and lighting.  In 2001, the Work was staged again on Broadway by  Defendants Rando, Carrafa, Pask, MacDevitt and Gale (the "Broadway Team").  Defendant Rando won the 2001 Tony Award for "Best Director" for his direction of the Work and Defendant Carrafa, was nominated for, but did not win the Tony Award.  In 2006, the Work was staged at the Mercury Theatre in Chicago, Illinois by the Chicago Team.

On November 13, 2006 each member of the Chicago Team received a "cease and desist" letter (the "letter") from lawyers representing the Broadway Team, the SSDC and the USA Guild.  A true and correct copy of the November 13, 2006 letter was attached to the Amended Complaint.  The letter stated that "original contributions" of each member of the Broadway

Team were "copied willfully, blatantly and practically wholesale" by each member of the Chicago Team. The letter further stated that the Chicago Team "set out to willfully duplicate [the Broadway Team's creative elements] in their entirety and with extraordinary precision." The letter demanded that within ten days the Chicago Team represent in writing that they agree to cease performing Urinetown (the show closed in May 2006), that Mr. Loeffler "decline and remit" the Jefferson Award and After Dark Award, and that the Chicago team provide an accounting to "assess license fees and damages." The letter closed with an admonition to Plaintiffs that the Defendants authorized their lawyers to "vigorously and promptly pursue their rights in the United States District Court in the event [Plaintiffs] do not comply with the terms of this letter."

On November 14, 2006, the Broadway Team, Defendant Hauptman, representing the SSDC, and USA held a press conference in the SSDC's offices in New York City, where the Defendants publicly released the letter and publicly stated that the Chicago Team plagiarized stage direction, choreography, scenic design, costumes and lighting from the Broadway Team. During the press conference, the Defendants publicly stated that the Chicago Production was "nearly identical" to the Broadway Production, that the Act I Finale was "copied exactly" and the Defendant's called the Chicago Team "plagiarists." Attached to the Amended Complaint is an article in which the Chicago Team is accused of plagiarism. On December 7, 2006, McDonnell, the original director and choreographer of the Work, publicly stated that the Broadway Team had copied substantial portions of McDonnell's creative authorship present in the original staging of the Work.

Plaintiffs allege that the Defendants made public statements that the Chicago Production was "nearly identical" to the Broadway Production, that the Act I Finale was "copied exactly" and that the Chicago Team are "plagiarists" are false and defamatory. According to Plaintiffs, the term "plagiarist" has an objective and factual meaning in the creative arts profession. The clear and unequivocal effect of Defendants' statements is that the Chicago Team intentionally committed professional and intellectual theft. Moreover, the statements were not expressions of opinion. Lastly, the statements were defamatory *per se* because they attacked the professional honesty, integrity and ability of each member of the Chicago Team and damaged the reputations of each member of the Chicago Team in the eyes of the creative arts community in which they work and in the minds of thousands of writers, directors, choreographers, designers, actors, producers and millions of theatre patrons. The statements were made with actual malice, with the knowledge that they are false or reckless disregard for whether they are false and in with the knowledge that the allegations would likely cause actual harm to the Plaintiffs professional reputations. The allegations were made within sixteen hours of sending the letter to Plaintiffs, in the offices of the very union to which several of the parties belong, giving the allegations and Defendants' a false air of legitimacy and unfairly attacking the Plaintiffs' in such a manner that it would be nearly impossible for the Plaintiffs to defend against such charges.

Plaintiffs request that this Court issue a declaratory judgment that Plaintiffs' production of the Work was unique and not copied protectable creative authorship lawfully owned by the Defendants; issue a declaratory judgment that Plaintiffs' production of the Work was unique and that Plaintiffs did not pass off Defendants' work as their own; issue a permanent injunction against Defendants, jointly and severally, enjoining and prohibiting Defendants, their agents,

servants, employees, officers, attorneys, successors and assigns from making any further public statements inconsistent with the judgments of non-infringement; order Defendants, jointly and severally, to place a minimum one-quarter (1/4) page advertisement in Variety Magazine recant their allegations and apologizing to Plaintiffs; order an award of damages against the Defendants, jointly and severally, in an amount to be determined at trial; and order an award of attorney's fees and costs against the Defendants, jointly and severally, as provided by Section 35(a) of the Lanham Act. Plaintiffs conceded in their reply brief that USA had no ownership interests in any copyrights at issue in the Copyright Act and Lanham Act claims.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ v. City of Chicago*, 2007 WL 2669403 at *7 (7th Cir. September 13, 2007) (citing *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (May 21, 2007). All reasonable inferences are to be drawn in favor of the plaintiff. *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 493 (7th Cir. 1998) (citation omitted).

## III. DISCUSSION

### A. *Non-Infringement under the Copyright Act and Lanham Act*

Plaintiffs claim they are entitled to declaratory judgment of non-infringement of the Copyright Act and the Lanham Act for their use of certain works registered with the Copyright Office and owned by the Defendants. However, Plaintiffs concede that USA does not own "the proprietary rights" at issue in the claims involving the Copyright Act and the Lanham Act. They simply argue that USA has a sufficient legal interest in the proprietary rights of its members. In doing so, Plaintiffs cite nothing- no case law, no law review articles, nothing- supporting the proposition that a suit seeking declaration of non-infringement can be maintained against parties who are unable to assert infringement themselves. Plaintiffs merely contend that USA has a legal interest in the outcome of this lawsuit as well as the proprietary rights at issue by virtue of the copyrights.

The Seventh Circuit has noted that "[t]he purposes of declaratory judgments are to 'clarify[ ] and settl[e] the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." ' Tempco Elec. Heater Corp. v. Omega Eng'g Inc., 819 F.2d at 749 ( quoting Borchard, Declaratory Judgements 299 (2d ed. 1941). Here, Plaintiffs have no legal relations with USA that require clarification or settlement. Thus, in the instant case, declaratory judgment against USA serves no real purpose other to satisfy Plaintiffs' thirst for revenge against USA for siding with the other Defendants.

Furthermore, if USA sought a declaratory judgment of copyright infringement or damages for copyright infringement against Plaintiffs, it would surely fail for lack of standing because it is an "owner"nor is it a "beneficial owner" (e.g.- a licensee) of any copyright at issue under the Copyright Act. 17 U.S.C. § 501(b). To prove copyright infringement, a plaintiff must first demonstrate the she owns a valid copyright. Feist Publications, Inc. v. Rural Telephone

Service Co., Inc., 499 U.S. 340, 361 (1991). Therefore here, it is fairly evident that there is nothing to declare against USA, as it is incapable of pursuing a copyright infringement action against Plaintiffs.

As for the Lanham Act, section 1125(a)(1) provides that a cause of action may be asserted by "any person who believes that he or she is or is likely to be damaged" by infringing conduct. Thus, perhaps USA could satisfy prudential standing as someone within the zone of interests protected by the Lanham Act. See generally 2 AM. JUR. 2d Administrative Law § 430 (2007). But USA could hardly begin to show Article III standing of an injury in fact, which is (a) concrete and particularized and (b) actual or imminent, Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), even under associational standing, see Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 181 (2000). Whatever legal rights USA has in the proprietary interests at issue in this litigation, they are implicated in this suit.

Therefore, counts I and II are dismissed against USA.

B.      Defamation

USA contends that Plaintiffs have failed to state a claim upon which relief can be granted because Plaintiffs have not satisfied Illinois pleading standards for defamation. USA complains of Plaintiffs' general use of the collective term "Defendants" instead of specifying which of the particular defendants made the respective statements constituting the defamatory remarks. Illinois pleading standards do not apply to this action because this is a federal court applying the Federal Rules of Civil Procedure. Rule 9(b) of said rules only requires pleading with particularity when making averments of fraud or mistake. Plaintiffs are not alleging fraud or mistake. Defendants do not contend that the complaint fails to fairly apprise it of the nature of

the claim or the ground upon which it rests.  Therefore at this stage of the action, dismissal on the grounds of insufficient pleading under Rule 12(b)(6) is inappropriate and DENIED.  This result is the same for certain of Defendants who moved for dismissal on the pleadings pursuant to Rule 12(c).

USA contends next that Plaintiffs fail to plead defamation *per se*.  Under Illinois law, a statement can be found to defamation *per se* if it consists of words that impute a person has committed a crime; words that impute a person is infected with a loathsome communicable disease; words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and words that impute a person has engaged in adultery or fornication.  <u>Lott v. Levitt</u>, 469 F.Supp.2d 575, 579  (N.D. Ill. 2007) (citing <u>Solaia Tech., LLC v. Specialty Pub. Co.</u>, 221 Ill.2d 558, 852 N.E.2d 825, 839 (2006)).  "Statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." <u>Kolegas v. Heftel Broadcasting Corp.</u>, 154 Ill.2d 1, 10,  607 N.E.2d 201, 206 (1992).  It is beyond doubt that statements consisting of false accusations of plagiarism against professionals in industries where the measure of the quality of work centers on creativity, originality and integrity (i.e.- authors, journalists, artists, thespians, publishers, producers and directors of fine arts productions, etc.) are capable of imputing such persons lack ability or otherwise prejudice such persons in their professions.  Plaintiffs' false allegations that USA (and the other defendants) published (made public) statements that Plaintiffs copied exactly their work, that it was nearly identical to their work, that they committed  plagiarism and that

they received nominations and awards based upon their work easily qualify as defamatory *per se*.[2]

USA argues that concluding the statements are defamatory *per se* still does not save the amended complaint because under Illinois law, defamatory statements cannot be actionable if they are reasonably capable of an innocent interpretation. Kolegas, 154 Ill.2d at 11, 607 N.E.2d at 206. Furthermore, this rule "requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning." Id. If a statement is susceptible to a reasonably innocent interpretation, it cannot be actionable per se." Id. Determining whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide. Id.

According to USA, the charge of "plagiarism" —viewed in its entirety and in proper context as the innocent construction rule demands— can be reasonably construed as merely reflecting the honest and well-founded airing of legitimate grievances by USA. This is an absurd proposition. The Court takes it as true for purposes of this motion that the defendants stated that Plaintiffs plagiarized their work. The Illinois Supreme Court instructs courts to give allegedly defamatory words their natural and obvious meaning when applying the innocent construction rule. Bryson v. News America Publications, Inc., 174 Ill.2d 77, 90, 672 N.E.2d 1207, 1290 (1996)(citation omitted). One plagiarizes when one appropriates the work of another and utilizes it as if it were his own original work. The term is not capable of any meaning that would not impugn Plaintiffs' ability or not prejudice them in their profession. There can be no serious

---

[2] In keeping with the rule that on a 12(b)(6) motion all reasonable inferences are drawn in favor of the plaintiff, the Court will assume that the plagiarism accusation was attributable to the Defendants and not the journalist's embellishment or opinion.

debate that no one would pay money to watch performances put on by plagiarists.  No one.  This Court concludes that Plaintiffs state valid claims under the Federal Rules of Civil Procedure for the Illinois state law claim of defamation *per se*.

Having determined that the amended complaint state a claim for defamation *per se*, it is unnecessary to examine whether it states a sufficient claim for defamation *per quod*.  However, certain Defendants  argue that the statements amount to mere opinion and are there unactionable as defamation.  Even if a statement is defamatory, it is not actionable if it is a constitutionally protected expression of opinion.  Mittleman v. Witous, 135 Ill. 2d 220, 239, 552 N.E.2d 973, 982 (1989) (abrogated on other grounds by Kuwik v. Starmark Star Marketing and Admin., Inc., 156 Ill.2d 16, 619 N.E.2d 129 (1993).  A statement that cannot "reasonably be interpreted as stating actual facts" about an individual is constitutionally protected speech.  See Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990).  An obvious statement of opinion rather than fact is thus not actionable.  Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993).  That is, "[i]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."  Id. (citation omitted).  Use of the prefatory words "in my opinion" will not shield a statement of fact from a defamation action.  Id. (citing Milkovich, 497 U.S. at 18-21).

To determine whether a statement is one of opinion or fact, Illinois courts rely on the Restatement (Second) of Torts' distinction between "pure opinion" and "mixed opinion." Mittleman, 135 Ill. 2d at 243, 552 N.E.2d at 984.  According to the Restatement, "pure opinion" is an expression of opinion by which the maker of a comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct,

qualifications or character.  Quinn, 276 Ill. App. 3d at 866, 658 N.E.2d at 1230 ( citing

Restatement (2d) Torts, §566, Comment b, at 171 (1977)).  "Mixed opinion" is an opinion in

form or context that is apparently based upon facts which have not been stated by the defendant

or assumed to exist by the parties to the communication.  Id. ( citing Restatement (2d) Torts,

§566, Comment b, at 172 (1977)).  In addition, Illinois courts also use the four factor test set

forth in Ollman v. Evans, 750 F.2d 970 (D.C. Cir. 1984), cert. denied 471 U.S. 1127, 105 S.Ct.

2662 (1985), "to supplement, rather than replace, the analytical framework of the Restatement."

Mittleman, 135 Ill. 2d at 243, 552 N.E.2d at 244; accord Quinn, 276 Ill. App. 3d at 866, 658

N.E.2d at 1230.  The Ollman court established the following four factors to determine whether,

under the totality of the circumstances, the average reader would view the statement as fact or

opinion:

> 1) whether the statement has a precise core of meaning for which a consensus of
> understanding exists, or, conversely, whether the statement is indefinite and
> ambiguous; 2) whether the statement is verifiable, i.e., capable of being
> objectively characterized as true or false; 3) whether the literary context of the
> statement would influence the average reader's readiness to infer that a particular
> statement has a factual context; and 4) whether the broader social context or
> setting in which the statement appears signals a usage as either fact or opinion.

Here, "plagiarizes" has a precise core of meaning for which a consensus of understanding

exists, which is why the Court readily concluded that the amended complaint properly states a

claim for defamation per se.  The statement is verifiable; whether Plaintiffs appropriated

Defendants work and infringed upon copyrights can be verified.  Stating that "person X

plagiarized my work" easily communicates to the average reader/listener that there is a factual

context behind the statement.  Moreover, Defendants provided a useful roadmap of the factual

context in their letter.  Lastly, when someone in an artistic profession hires lawyers, threatens

infringement actions, and communicates via journalists that their work has been plagiarized, the accusation signals usage as a fact. Defendants cannot demonstrate that the amended complaint fails to state a sufficient claim for defamation and that the statements were mere opinion.

## IV. CONCLUSION

For the foregoing reasons, USA's Motion to Dismiss is GRANTED in part and DENIED in part. The other Defendants' Motion for Judgment on the Pleadings is DENIED.


Enter:

/s/ David H. Coar
David H. Coar
United States District Judge


Dated: **September 28, 2007**